JAMES E. AND BARBARA WITTSTRUCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wittstruck v. Commissioner
Docket No. 10719-77.
United States Tax Court
T.C. Memo 1980-62; 1980 Tax Ct. Memo LEXIS 523; 39 T.C.M. (CCH) 1168; T.C.M. (RIA) 80062; March 5, 1980, Filed Duane L. Nelson, for the petitioners. J. Anthony Hoefer, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioners' federal income tax: Year
Deficiency
1974
$475
1975
451
The sole issue to be decided is whether petitioners' ownership of their mobile home at Fairfield Bay, Arkansas, was an activity not engaged in for profit. FINDINGS OF FACT Petitioners resided in Lincoln, Nebraska, when they filed their petition. In 1970 petitioners acquired a lot and mobile home in Fairfield Bay, Arkansas. Fairfield Bay is a recreational and retirement area. There is a forty thousand acre lake there which is one *525 of the deepest lakes in Arkansas and which is a major bass fishing area. There is also an 18-hole professional golf course there and another golf course was under construction in 1970. There are 18 to 20 tennis courts. In addition, Fairfield Bay is an attractive sightseeing area. Petitioners entered into rental agreements with Fairfield Leasing and Rental, a division of Fairfield Communities Land Company ("rental agency"), whereby the rental agency agreed to maintain the mobile home in good condition, supply the linens and rent it to guests, and petitioners agreed to furnish the mobile home with furniture and cooking equipment and to pay utilities, real property taxes and fire insurance premiums. The rental rate per night for a couple from 1970 through the 1974 season was $10 per night, and for the 1975 season was $7 per night. Petitioners received 70 percent of the rent collected and the rental agency kept 30 percent. The season at Fairfield Bay was from April 1 to October 1. From 1970 through 1975 petitioners used their Fairfield Bay mobile home personally approximately once each year usually in October after the season ended. They have on occasion stayed in the mobile *526 home for as long as five consecutive days. Petitioners' daughter used the mobile home apparently rent-free for her three day honeymoon in 1977. Petitioners' tax returns for 1970 through 1975 showed the following rental receipts, depreciation, other expenses and net losses with respect to their mobile home: Year
Receipts [1]
Depreciation
Other Expenses
Net Loss
1970
$ 1,136
$ 732
$ 1,464
($ 1,060)
1971
714
974
782
( 1,042)
1972
882
974
1,584
( 1,676)
1973
995
892
$1,714
( 1,611)
1974
29
867
1,660
( 2,498)
1975
46
867
962
( 1,783)
If petitioners' mobile home had been rented each year every day from April 1 to October 1, petitioners' receipts (70 percent of gross rents collected), its expenses (including depreciation) actually incurred, and its resulting net loss (maximum possible rents for season less actual expenses) would have been as follows: Year
Maximum Receipts
Actual Expenses
Net Loss
1970
$ 1,288 [2]
$ 2,196
($ 908)
1971
1,288
1,756
( 468)
1972
1,288
$2,558
( 1,270)
1973
1,288
2,606
( 1,318)
1974
1,288
2,527
( 1,239)
1975
902 [3]
1,829
( 927)
*527 Thus, even if petitioners had been able to rent their mobile home for the entire season at the nightly rent set forth in the rental agreement, petitioners would have experienced a loss in each of the years 1970 through 1975. From 1970 through 1975 petitioners made no attempt to sell their mobile home, and, in fact, they turned down one purchase offer. Petitioners received wages and other compensation of $25,870 in 1974 and $28,474 in 1975. In his notice of deficiency respondent increased petitioners' taxable income as follows: 1974
Rental income
$ 29.00
Less: Interest
$ 528.00
Taxes
99.00
( 627.00)
Loss deductible under § 183(b)
( 598.00)
Loss claimed on return
2,468.00
Increase to income
$ 1,900.00
1975
Rental income
$ 46.00
Less: Interest
$ 153.00
Tax
64.00
( 217.00)
Loss deductible under § 183(b)
( 171.00)
Loss claimed on return
1,783.00
Increase to income
$ 1,612.00
OPINION Section 183(c) [4] states that an "activity not engaged in for profit" means an activity other than one for *528 which deductions are allowable under section 162 or section 212(1) or (2). Section 183(a) provides that when an activity of a taxpayer is not engaged in for profit, the only deductions allowed are those provided in section 183. [5] The sole issue here is whether petitioners' ownership of their lot and mobile home at Fairfield Bay, Arkansas, was an "activity not engaged in for profit." Treasury Regulations Sec. 1.183-2(b)(1)-(9) sets forth nine separate factors which should be examined to determine whether an activity was or was not engaged in for profit. These enumerated factors are neither exclusive nor necessarily controlling in each case and "all the facts and circumstances with respect to the activity are to be taken into account." Sec. 1.183-2(b), Income Tax Regs. The nine enumerated *529 factors are more relevant to farming and hobbies than rental property and are not very helpful in this case. See Jasionowski v. Commissioner,66 T.C. 312, 321 n. 6 (1974). The test under section 183 is not whether the taxpayer's intention and expectation of profit is reasonable but rather whether such intention and expectation is bona fide. Sec. 1.183-2(a), Income Tax Regs.
Petitioner James Wittstruck testified that he intended to rent the property for a profit and was led to believe he could do so by the salesman who sold him the mobile home. Moreover, his own view of the property and the surrounding recreational facilities caused him to conclude that his mobile home would be in considerable demand. He immediately entered into a leasing agreement with a rental agency upon purchasing the mobile home and continued in the rental program at all times thereafter. He and his family used the mobile home only once a year after the season (the season was April 1 to October 1) and then never for more than five days. The fact that petitioners gained some limited personal pleasure from their investment would not alone cause it to be an activity not entered into for profit. *530 Sec. 1.183-2(b)(9), Income Tax Regs.
However, here petitioners experienced nothing but losses from the time they purchased their mobile through the years in issue. Petitioners claimed this is due to the oil crisis which began in late 1973. However, even if petitioners had been successful in renting their mobile home every night during the season at the rent specified in their rental agreement, they would have incurred substantial losses in each year. By the years in issue it should have been obvious that only the most incorrigible optimist could view the mobile home as a source of profit. Continued retention of the mobile home after any reasonable hope or profit has clearly been ruled out makes it very difficult for us to find a good faith expectation of profit. We are convinced that petitioners' ownership of their mobile home was not, at least by the years in issue, an activity engaged in for profit, notwithstanding petitioner James Wittstruck's testimony to the contrary. See Sec. 1.183-2(b)(6), Income Tax Regs. We cannot conclude, in view of these facts, that petitioners had a bona fide expectation to make a profit under the rental agreements. Furthermore, petitioners *531 have demonstrated no expectation of making a profit from the sale of their mobile home.Petitioners never offered their mobile home for sale and, in fact, turned down one unsolicited offer to purchase. See sec. 1.183-2(b)(4), Income Tax Regs.
Under the facts and circumstances of this case, we hold that petitioners' ownership of their mobile home was an activity not engaged in for profit. Decision will be entered for the respondent. Footnotes
1. "Receipts" represents gross rent less 30 percent rental agency commissions.↩
2. 184 days x $10 per night x 70 percent. ↩
3. 184 days x $7 per night x 70 percent.↩
4. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue. ↩
5. For years beginning after 1975, section 280A specifically limits vacation home deduction expenses where the owner uses the vacation home as a "residence" in addition to renting it out during the year. Sec. 601, Tax Reform Act of 1976, 90 Stat. 1569.↩